No. 80-51893-S

STATE OF KANSAS, *Appellee,* v. RANDOLPH C. CABRAL, *Appellant.*

(619 P.2d 1163)

Opinion filed December 6, 1980.

*Louis S. Wexler,* of Wexler and Wingfield, of Shawnee Mission, argued the cause, and *Allan L. Hurlburt,* of Nickerson, was with him on the briefs for the appellant.

*Timothy J. Chambers,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Joseph P. O'Sullivan,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of rape (K.S.A. 1979 Supp. 21-3502) and aggravated kidnapping (K.S.A. 21-3421). The evidence presented at the trial was undisputed that in the early morning hours of June 8, 1979, the defendant, Randolph C. Cabral, had sexual relations with the complaining witness in Hutchinson. The complaining witness was a young lady, sixteen years of age, who was visiting in Hutchinson. In order to protect her name, we will refer to her as Miss A.

The primary issue presented to the jury was whether the sexual

relations between the defendant and Miss A were consensual or accomplished forcibly without her consent. Miss A was in Hutchinson visiting her sister, a student at Hutchinson Junior College and residing at the dormitory. On the evening of June 7, 1979, the sister drove Miss A and two friends, Mina and Rose, to the Fourth Street Station, a beer tavern. It was ladies night at the tavern, when all women were treated to free beer all night. During the course of the evening, Rose met an acquaintance, Ernie Cabral, who joined the young women. Miss A indicated that she wanted to meet someone and was introduced to Ernie's cousin, the defendant. The hour began getting late and it was suggested that the defendant drive the young women back to the dormitory. Thereupon, the defendant, Miss A, Ernie, Rose, and Mina got into the defendant's car and he drove them to the dormitory. Mina got out of the car and went into the dormitory but Rose and Miss A accepted the invitation of Ernie and the defendant to smoke marijuana and drink more beer. The four paired off, with Rose and Ernie in the back seat, defendant and Miss A in the front seat. They drove around for awhile and eventually ended up at Elmdale Park, commonly known as Mosquito Park. Rose and Ernie left the car and the defendant and Miss A remained in the car to smoke a "joint." In due time, the defendant tried to kiss Miss A, but she spurned his advances because he was "too old." Defendant then made further advances toward Miss A and, when she rejected him, he put his hand over her mouth and nose and threatened to throw her into Cow Creek if she did not do as he requested. She resisted and the defendant backed off and again agreed to take Miss A back to the dormitory. Rather than returning to the dormitory, defendant drove his car to Shadduck Park in South Hutchinson, where he grabbed Miss A's arm, locked the door, and proceeded to drive behind a tree and park the vehicle. The defendant then proceeded to forcibly rape Miss A. After it was over, Miss A requested the defendant to take her back to the dormitory and he proceeded to do so. As they were driving back, the defendant asked Miss A to hold his hand and to go out with him in the future. She resisted his advances and, in the course of the drive, jumped out of the car and began to run. The defendant chased her and Miss A began yelling for help. The defendant then fled.

The defendant's version of the story differed. Defendant tes-

tified in great detail about his seduction of Miss A and stated that, after some persuasion, she finally agreed to have sexual relations. Following the sexual relations, she became angry and used abusive language toward him. He tried to talk to her as they drove toward the dormitory. He stated that he pulled the car over to the side of the street to keep Miss A from jumping out of the moving car. He testified that she ran from the vehicle and sat down in the middle of an intersection, and that he tried to get her out of the intersection so that she would not be hurt. He finally left when she became abusive and kept swearing at him. The jury did not accept the defendant's version of the episode, concluding that the defendant was guilty of forcible rape and aggravated kidnapping. The defendant appealed.

Defendant's first point on the appeal is that the trial court erred in refusing to suppress statements made by the defendant to certain police officers. The record shows that the trial court conducted a *Jackson v. Denno* hearing and found that the statements were knowingly and voluntarily given after the defendant was given the *Miranda* warnings. The findings of the trial court are supported by substantial competent evidence presented at the suppression hearing and they cannot be disputed on appeal. *State v. White & Stewart*, 225 Kan. 87, 587 P.2d 1259 (1978). The defendant also asserts as a point of error certain remarks made by the prosecutor which the defendant maintains were prejudicial. The prosecutor's remarks complained of were made at the *Jackson v. Denno* hearing and were not made in the presence of the jury. We fail to see how such remarks, even if improper, could have prejudiced the rights of the defendant. The defendant also objects to certain questions asked one of the defendant's witnesses on cross-examination. We have examined this line of questioning and find that the questions were within the bounds of propriety and that the trial court did not abuse its discretion in refusing to strike the testimony of the witness on cross-examination.

The primary issue raised on the appeal is that the evidence, taken as a whole, was not sufficient to support a conviction of kidnapping as a crime separate and distinct from the commission of the forcible rape. Defendant maintains, in substance, that the defendant and the victim, Miss A, had been together all evening at the tavern and rode around in the defendant's car by mutual

consent. The evidence disclosed that, on the way to the dormitory where the victim was residing, the defendant turned into Shadduck Park in South Hutchinson, locked the car door, proceeded behind a tree, and raped the victim. The defendant maintains that the confinement in the automobile was incidental to and a necessary part of the force used in the commission of the forcible rape, and did not support a separate charge of kidnapping. The State contends that there was a separate and distinct kidnapping, because the defendant drove the car containing his victim behind a tree in order to facilitate the crime of rape and that evidence is sufficient to sustain the charge of rape.

Both the defendant and the State rely on *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976). *Buggs* is the leading Kansas case which discusses in depth the crime of kidnapping (K.S.A. 21-3420), and the elements necessary to establish the offense, where a taking or confinement occurs to facilitate the commission of another crime. Syllabus ¶ 10 of the opinion in *Buggs* states as follows:

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of a kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

The subject is discussed in the opinion on pages 209 through 217.

The basic issue presented for our consideration in this case is whether the confinement of the victim was merely incidental to the commission of the rape and of a kind inherent in the nature of rape or had some significance independent of the forcible rape committed by the defendant.

We have concluded that, under all the factual circumstances presented in the record, a separate and independent crime of kidnapping was not established. Here the defendant and his victim had been together all evening, driving around Hutchinson and stopping at various places by mutual consent. After leaving the first park and on the way to the dormitory where the victim resided, the defendant simply turned into the second park, locked the door, and proceeded to rape his victim. When forcible rape occurs in an automobile, of necessity, some confinement of the

woman is a necessary part of the force required in the commission of the rape. Such a confinement is of a kind inherent in the nature of forcible rape and incidental to the commission of the rape. Applying the factors set forth in *State v. Buggs,* we have concluded that the evidence presented at the trial was not sufficient to establish the independent crime of aggravated kidnapping and that the defendant should be discharged from the conviction on that charge. However, the conviction of the defendant on the charge of rape is fully supported by the evidence and must be upheld.

For the reasons set forth in this opinion, the judgment of the district court convicting the defendant of the crime of aggravated kidnapping (K.S.A. 21-3421) and the sentence imposed thereon by the district court are set aside and the defendant is discharged on that count of the information. The conviction and sentence imposed by the district court on the charge of rape (K.S.A. 1979 Supp. 21-3502) is not disturbed and is affirmed in all respects.